## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IAN B. CORBIN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-3406** |
| | : | |
| **GREGORY HACKLAR, *et al.*,** | : | |
| **Defendants.** | : | |

### <u>MEMORANDUM</u>

**GALLAGHER, J.**                                    **DECEMBER  20, 2022**

Plaintiff Ian B. Corbin, a convicted prisoner currently incarcerated at SCI Smithfield, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights and related state law claims arising from his arrest and prosecution on charges arising from a traffic stop.  Currently before the Court are Corbin's Complaint ("Compl." (ECF No. 2)), his Motion for Leave to Proceed *In Forma Pauperis*, and his Prisoner Trust Fund Account Statement (ECF Nos. 1, 3.)  Corbin asserts claims against the following Defendants:  (1) the Commonwealth of Pennsylvania; (2) Northampton County; (3) PennDOT; (4) Northampton County Common Pleas Court Judge Samuel Murray; (5) Lehigh County Court of Common Pleas Judge Maria Dantos; (6) Northampton County District Attorney Michael Thompson; (7) Northampton County Chief Public Defender Nuria DiLuzio; (8) Northampton County Public Defender Michael Light, II; and (9) Pennsylvania State Trooper Gregory Hacklar. (Compl. at 2-3.)  Defendants Murray, Dantos, Thompson, DiLuzio, Light, and Hacklar are named in their official and individual capacities.  Corbin will be granted leave to proceed *in forma pauperis*.  For the following reasons, all claims against the Commonwealth of Pennsylvania, PennDOT, Northampton County, Murray, Dantos, Thompson, and the civil rights claims against  DiLuzio and Light will be dismissed with prejudice.  Corbin's official capacity

claims and his claims asserting violations of the Thirteenth Amendment, 42 U.S.C. §§ 1981, 1987, 1988, and 1994, and federal and state criminal statutes will also be dismissed with prejudice.  The Court will abstain from addressing the remainder of Corbin's claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and the case will be stayed.

## I.     PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS[1]

On January 26, 2022, following a non-jury trial, Corbin was convicted on one count of driving under the influence of a controlled substance, one count of driving with a suspended license, and one count of violating hazard regulations, charges that arose from an April 18, 2019 traffic stop.  *See Commonwealth v. Corbin*, CP-48-CR-2562-2018 (C.P. Northampton).  The public docket reflects that Corbin appealed his conviction and is currently awaiting a decision from the Pennsylvania Superior Court.  *Id.*  The gravamen of Corbin's Complaint is that the traffic stop and the related blood test giving rise to the charges against him were conducted in violation of his Fourth Amendment rights, and that his continued pretrial confinement for bailable offenses and the pursuit of a conviction against him were part of an effort to hide the illegal nature of the arrest.  He claims that, as a result, he has been wrongly convicted and incarcerated.

Corbin alleges that on April 19, 2018, he and a companion were sitting in Corbin's disabled car, which was pulled over to the side of the road, when Defendant Hacklar stopped in his patrol car, approached Corbin's car, and requested his identification.  (Compl. at 4.)  Upon checking Corbin's license and learning that his driving privileges were suspended, Defendant

---

[1] The allegations set forth in this Memorandum are taken from Corbin's Complaint.  (ECF No. 2.)  The Court adopts the pagination supplied by the CM/ECF docketing system.  Additionally, the Court includes facts reflected in the publicly available state court docket, of which this Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Hacklar demanded that Corbin, who is African American, exit his car, whereupon Hacklar is alleged to have conducted a field sobriety test, stating that he smelled marijuana. (*Id.*) Hacklar allegedly searched Corbin's car, where he located a small amount of marijuana in a closed compartment. (*Id.*) Hacklar then placed Corbin under arrest and transported him to the Northampton County DUI Center. (*Id.*)

Corbin alleges that Defendant Hacklar did not provide warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). (*Id.* at 5.) Instead, Hacklar allegedly read to Corbin an excerpt from 75 Pa. Cons. Stat. § 1547, which Corbin characterizes as a blood test warning, allegedly prepared and approved by Defendant PennDOT. (*Id.*) Corbin alleges that Hacklar read him the following warning: "You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test." (*Id.*) Corbin correctly asserts that § 1547, titled "Chemical testing to determine amount of alcohol or controlled substance," does not include this language. *See* 75 Pa. Cons. Stat. § 1547. He claims that it was Hacklar's intent to obtain a blood specimen in violation of Corbin's rights by omitting the *Miranda* warnings and using instead the non-existent and allegedly intimidating language quoted. (*Id.*) Corbin was released once the blood test was completed. (*Id.* at 6.)

On May 17, 2018, Corbin was charged with three counts of driving while under the influence, driving with a suspended license, possession of marijuana, and violation of a hazard regulation. (*Id.*) Following a preliminary hearing on August 9, 2018, during which Corbin was not represented by counsel, all charges were bound over for trial. On March 18, 2019, Defendant Light was appointed to represent Corbin. (*Id.*)

Corbin alleges that on October 8, 2019, he was arrested in Lehigh County[2] and on October 10, 2019, his bail in another case pending in Lehigh County was revoked by Defendant Dantos.[3]  (*Id.*)  On October 17, 2019, Defendant Murray issued a bench warrant following Corbin's failure to appear at a hearing in the Northampton County criminal case.  (Id. at 7.)  Corbin alleges that Defendants Murray, Thompson, and Light were aware that he was detained in Lehigh County at the time of the hearing, and that they, together with Defendant Dantos, refused to arrange to have Corbin appear in the Northampton County hearing.  (*Id.*)  Corbin alleges that he was detained in Lehigh County from October 10, 2019 until June 23, 2020 under the condition of "no bail" for bailable offenses by Defendant Dantos, because of the outstanding bench warrant in the Northampton County case.  He asserts that Defendants Murray, Thompson, and Light thus "weaponized" bail as a means of trying to coerce or manipulate Corbin into entering into a plea agreement on the charges pending in Northampton County.  (*Id.*)

On June 23, 2020, Defendant Dantos reinstated Corbin's bail in the Lehigh County case over which she was presiding.  (*Id.* at 8.)  Corbin was subsequently transferred to Northampton County, where at a hearing on August 7, 2020, bail was set in the Northampton County case.  (*Id.*)

Corbin describes various events that occurred in the course of pretrial proceedings.  He alleges that on August 26, 2021, he received a telephone call from Defendant DiLuzio and non-Defendant Public Defender Susan Hutnick (who had replaced Defendant Light).  Corbin alleges they threatened him with revocation of his bail if he did not enter into a plea agreement.  (*Id.* at

---

[2] *See Commonwealth v. Corbin*, CP-39-CR-5062-2019 (C.P. Lehigh).

[3] The publicly available docket in *Commonwealth v. Corbin*, No. CP-39-CR-3456-2019 (C.P. Lehigh) confirms that, on October 10, 2019, Corbin's bail was revoked in a criminal case arising from an August 1, 2019 arrest on drug charges.  Defendant Dantos is identified as the presiding judge.  (*Id.*)

9.)  At an August 26, 2021 hearing, Corbin alleges that the Court produced two requests for continuances that included Corbin's forged signature.  (*Id.*)  These allegedly contributed to a violation of Corbin's right to a speedy trial.  (Id.)  Corbin alleges that he unsuccessfully sought the recusal of Defendant Murray, based on Murray's alleged race and class-based animus.  (*Id.* at 10.)  He also alleges that on November 23, 2021, Defendant Murray denied his motion for relief under Pennsylvania Rule of Criminal Procedure 600 (a speedy trial motion).  (*Id.*)

Corbin's criminal trial commenced on January 3, 2022.  (*Id.*)  Corbin alleges that during the course of the non-jury trial, the results of his illegally obtained blood sample were admitted into evidence, Defendant Hacklar provided perjured testimony concerning the status of Corbin's car on the night of the incident, and Defendant Murray, who presided, was discourteous to Corbin's mother, thereby allegedly establishing his bias and prejudice against Corbin.  Defendant Murray is also alleged to have relied on Hacklar's perjured testimony to reach his verdict.  (*Id.* at 11.)  Corbin was found guilty on three of the four charges that advanced to trial.  (*Id.*)  On January 26, 2022, Corbin was sentenced to a term of imprisonment of three days to six months incarceration and was assessed a fine of $3,173.76.  (*Id.*)  He was given credit for time served.  *See Commonwealth v. Corbin*, CP-39-CR-5062-2019 (C.P. Lehigh).  Corbin's appeal of his conviction remains pending.

In short, Corbin alleges that he was subject to an illegal search and detention, that his blood sample was obtained illegally, that he was subject to excessive pretrial detention, and that his conviction was pursued and obtained as a means of hiding the illegal nature of the original search and blood test.  As a result, he has been prosecuted, incarcerated, suffered damage to his finances and reputation, and experienced mental anguish and emotional distress.  (*Id.* at 11-12.)  Corbin asserts claims pursuant to 42 U.S.C. § 1983 based on violations of his Fourth, Fifth,

Sixth, Eighth, Thirteenth,[4] and Fourteenth Amendment rights.  Corbin also alleges violations of

several federal statutes, including 42 U.S.C. §§ 1981, 1985, 1986, 1987, 1988, and 1994.[5]

---

[4] The Thirteenth Amendment prohibits involuntary servitude, except as punishment for a crime for which a party has been duly convicted.  U.S. Const. amend. XIII.; *United States v. Kozminski*, 487 U.S. 931, 943 (1987).  In the context of a convicted prisoner, the courts have held that prisoners have no Thirteenth Amendment or liberty or property interest in payment for their work and may be lawfully compelled to work.  *See Dmytryszyn v. Hickenlooper*, 527 F. App'x 757, 760 (10th Cir. 2013) (nonprecedential) (inmate's Thirteenth Amendment and due process rights not violated when he was required to work for payment below minimum wage); *Serra v. Lappin*, 600 F.3d 1191, 1196 (9th Cir. 2010) ("A prisoner has no basis for asserting a violation of due process simply because he is made or allowed to work for low pay as punishment for a crime of which he was lawfully convicted."); *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985) (holding that the state does not deprive a prisoner of a constitutionally protected liberty interest by forcing him to work without pay); *Murray v. Mississippi Dep't Corr.*, 911 F.2d 1167, 1167-68 (5th Cir. 1990) (same).

     In the context of a pretrial detainee, the Third Circuit has held that such prisoners may be compelled to perform only certain services.  *Tourscher v. McCullough*, 184 F.3d 236, 242 (3d Cir. 1999) (holding that, while a pretrial detainee could be compelled to perform "some service" in the prison, such as "general housekeeping responsibilities" consistent with the Due Process Clause, dismissal of complaint before service was premature where inmate, who was held for a time as a pretrial detainee, alleged that he was required to work in the prison cafeteria in violation of the Thirteenth Amendment.).

     Although Corbin refers to "involuntary servitude" and "peonage" throughout his Complaint, and asserts violations of his Thirteenth Amendment rights, he does not include factual allegations in his Complaint that he was compelled to work as a detainee, that any named Defendant compelled him to work, or facts that otherwise relate to a Thirteenth Amendment violation.  (*See* Compl.)  Thus, whether his claim relates to the time he was a pretrial detainee or a convicted prisoner, his allegations fail to set forth a plausible claim under the Thirteenth Amendment based on involuntary servitude.  This claim will be dismissed.

[5] 42 U.S.C § 1981 prohibits racial discrimination in contracts.  Corbin does not include any allegations suggesting that any contractual relations exist among the parties.  Thus, it does not appear that § 1981 is applicable.  42 U.S.C § 1987 does not give rise to a private cause of action. *See Wolfe v. Beard*, No. 10-2566, 2010 WL 5173199, at *12 (E.D. Pa. Dec. 9, 2010) ("Section 1987 empowers federal officials to prosecute violations of certain statutorily enumerated crimes. . . . [Section] 1987 does not provide a private right of action.") (citations omitted).  42 U.S.C § 1988, which provides for an award of attorneys' fees in certain circumstances, does not provide a basis for an independent right of action.  *See Vecchia v. Town of Hempstead*, 927 F. Supp 579, 580-81 (E.D.N.Y 1996) (citing *North Carolina Dep't of Transp. v. Crest Street Comm. Council, Inc.*, 479 U.S. 6, 14 (1986).  42 U.S.C. § 1944 prohibits peonage and fails for the same reason as Corbin's Thirteenth Amendment claim.  *See e.g., Amnesty America v. County of Allegheny*, 822 F.Supp. 297, 300 (W.D. Pa. 1993) (construing and disposing of claims under Thirteenth Amendment and § 1944 together).  These claims will be dismissed.

(Compl. at 1.)  He also asserts violations of unidentified federal and state criminal statutes,[6] the

Pennsylvania Constitution,[7] 28 U.S.C. § 453,[8] and the Rules of Professional Conduct governing

attorneys and the Pennsylvania Judicial Code of Conduct.[9]  (*Id.*)

---

[6] The allegation that criminal statutes were violated is conclusory and not plausible for this reason alone.  Moreover, criminal statutes generally do not give rise to a basis for civil liability.  *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."); *Brown v. U.S. Dist. Ct. for the E. Dist. of Pa.*, No. 18-747 (E.D. Pa.) (Apr. 9, 2018 Order at 6 (dismissing claims under 18 U.S.C. § 1589 as "meritless and frivolous")), *aff'd*, 740 F. App'x 239, 240 (3d Cir. 2018) (*per curiam*); *Brown v. Progressive Specialty Ins. Co.*, 763 F. App'x 146, 147 (3d Cir. 2019) (*per curiam*) ("Brown's mere citation to various constitutional provisions cannot transform his state law claims into causes of action 'arising under' the Constitution.").  Indeed, the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action.  *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone.").  The fact that a statute has been violated and some person harmed does not automatically give rise to a private cause of action for the injured person.  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979).  These claims will be dismissed.

[7] There is no private right of action for damages under the Pennsylvania Constitution, therefore these claims are dismissed.  *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

[8] 42 U.S.C. § 453, which requires federal judges to swear an oath of allegiance to the Constitution, is clearly inapplicable to a case such as this one involving state court judges, and does not, in any event, create a substantive cause of action for violation of the required oath.  *Lewis v. Green*, 629 F. Supp. 546, 554 n.14 (D.D.C. 1986).  This claim will be dismissed.

[9] "Violation of the Rules of Professional Conduct does not, without more, mean the conduct is actionable or otherwise give rise to a cause of action against a lawyer."  *Deitrick v. Costa*, No. 06-1556, 2015 WL 1605700, at *17 (M.D. Pa. Apr. 9, 2015 (citing *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1284 (Pa. 1992).  Moreover, both the Rules of Professional Conduct and the Pennsylvania Judicial Code of Conduct implicate state law and do not give rise to a federal civil rights claim.  *Accord Canton v. Harris*, 489 U.S. 378, 387 (1989) (holding that

Corbin requests a preliminary injunction in the form of a preliminary award of money and an Order from this Court to assist him in obtaining materials from the underlying criminal proceedings, the return or destruction of all property illegally obtained in the course of the criminal proceedings, a declaratory judgment as to all suitable matters, and an award of compensatory and punitive damages.  (Compl. at 21.)  He also requests the criminal prosecution of the individual Defendants.[10]  (*Id.* at 13, 14, 15, 16, 17).

## II.    STANDARD OF REVIEW

The Court will grant Corbin leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[11]  Accordingly, his Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  That provision of the Prison Litigation Reform Act requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

---

state law negligence allegation cannot form basis of 1983 liability).  These claims will be dismissed.

[10] "A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted).  Moreover, "it is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution."  *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (citations omitted); *Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").  Because Corbin's request that the named Defendants be prosecuted is not relief this Court can grant under § 1983 for civil rights violations, the claim will be dismissed.

[11] Because he is a prisoner, the PLRA requires Corbin to pay the full amount of the filing fee in installments regardless of the outcome of this case.

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Corbin is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A.        Claims for Injunctive and Declaratory Relief

In his prayer for relief, Corbin requests injunctive relief in the form of an immediate monetary award intended to begin to address his injuries pending the outcome of this litigation, the intervention of this Court to assist Corbin in obtaining materials used in the prosecution of the underlying criminal case and the return or destruction of property illegally obtained in the course of the criminal proceedings, and a declaratory judgment in his favor as to all suitable matters.  (Compl. at 21.)

### 1.        Injunctive Relief

Corbin's request for a preliminary award of money damages does not support a request for an injunction.  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019).  Corbin's request for an injunction awarding him immediate money damages must be dismissed since "[i]rreparable harm is injury that cannot adequately be compensated by monetary damages."  *See Tantopia Franchising Co., LLC v. W. Coast Tans of PA, LLC*, 918 F. Supp. 2d 407, 417 (E.D. Pa. 2013).

Corbin's requests for the Court to intervene in his state criminal case to assist him in obtaining documents for his appeal and on his request for return or destruction of property obtained in the underlying proceedings, are also denied.  In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding."  *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger*).  *Younger*, as will be discussed in greater detail later, requires this Court to abstain from considering this request.

### 2. Declaratory Relief

Corbin does not identify the nature of the declaratory relief that he seeks, but construing his allegations liberally, he appears to seek a declaration that the conduct of the Defendants violated his constitutional rights. Declaratory relief is unavailable to adjudicate past conduct. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm."). This request for relief is improper and will be dismissed with prejudice.

### B. Claims Against Public Defenders DiLuzio and Light

### 1. Section 1983 Claims

Corbin asserts § 1983 claims against Defendants DiLuzio and Light for deprivation of his constitutional rights, conspiracy to deprive him of those rights, obstruction of justice, official oppression, securing execution of documents by deception, tampering with records, forgery, blackmail, criminal coercion, and ineffective assistance of counsel. (Compl. at 13, 14.) These claims are based on Light's representation of Corbin as appointed counsel in the Northampton County criminal proceedings and DiLuzio's supervision of Light. (*Id.* at 13-15.) These 1983 claims are not plausible because "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."

11

*Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (footnote omitted). "Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999). *See also Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (*per curiam*) (noting that a court-appointed attorney is not a state actor for purposes of § 1983); *Webb v. Chapman*, 852 F. App'x 659, 660 (3d Cir. 2021) (*per curiam*) ("[A]ttorneys representing individuals in criminal proceedings generally are not state actors for purposes of § 1983."); *Singh v. Freehold Police Dep't*, No. 21-10451, 2022 WL 1470528, at *2 (D.N.J. May 10, 2022) ("Plaintiff['s] dissatisfaction with the representation provided by Mr. Moschella does not provide a basis for a civil rights claim against him."). Because Light and DiLuzio in their roles as public defenders are not state actors, Corbin's federal claims against them will be dismissed with prejudice.

### 2.    State Law Claims

The Court liberally construes Corbin's Complaint as including state law claims for forgery, blackmail, and tampering with records against Defendants Light and DiLuzio, which relate to Corbin's efforts to challenge the underlying criminal proceedings. However, *Younger* requires this Court to abstain from considering these claims at this time.[12]

### C.    Claims Against the Commonwealth of Pennsylvania and PennDOT

Corbin asserts claims against the Commonwealth of Pennsylvania and PennDOT for theft by deception and related claims, obstruction of justice, extortion, conspiracy, neglect to prevent

---

[12] The Court addresses the impact of *Younger* and why it requires abstaining from considering other claims asserted in Corbin's Complaint in more detail below. *See infra*, Section III.G. It is clear that Corbin's state law claims against Light and DiLuzio are subject to *Younger* abstention in the same manner as that doctrine applies to federal civil rights claims. *See DiPietro v. New Jersey Fam. Support Payment Ctr.*, 375 F. App'x 202, 204 (3d Cir. 2010) (*per curiam*) (affirming district court application of *Younger* abstention to both constitutional and state law claims).

conspiracy, and violations of his Fourth, Fifth, Sixth, Thirteenth and Fourteenth Amendment rights.  (Compl. at 17-18, 20.)  He requests an award of money damages.  (*Id.* at 18, 21.) However, states are not considered "persons" for purposes of § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that immunity.  *See* 42 Pa. Cons. Stat. § 8521(b).  *See also* 71 P.S. 61(a) (including PennDOT as one of administrative departments of Commonwealth of Pennsylvania); *Nails v. Pennsylvania Dep't of Transp.*, 414 F. Appx 452, 454 (3d Cir. 2011) (*per curiam*) (affirming dismissal of § 1983 claims against PennDOT on immunity grounds).  Accordingly, the claims for money damages that Corbin seeks to assert against the Commonwealth of Pennsylvania and PennDOT are dismissed with prejudice.[13]

---

[13] Corbin asserts an official capacity claim against Defendant Hacklar, who is alleged to be a Pennsylvania State Trooper.  (Compl. at 3). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will*, 491 U.S. at 70-71; *Atkin v. Johnson*, 432 F. App'x. 47, 48 (3d Cir. 2011) (*per curiam*) (official capacity claim against state trooper barred by immunity).  Accordingly, Corbin's official capacity claims against Defendant Hacklar are also barred by the Eleventh Amendment.

However, state officials sued in their individual capacities are "persons" within the meaning of Section 1983.  *See Hafer*, 502 U.S. at 31.  Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities.  *Id.*  The Eleventh Amendment also does not generally bar prospective declaratory or injunctive relief.  *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (explaining that "official-capacity actions for prospective relief are not treated as actions against the State"); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief."); *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016).  Corbin's individual capacity claims against Hacklar are addressed in Section III.G., *infra*.

D.     **Claims Against Northampton County**

Corbin asserts claims against Northampton County for theft by deception and related

claims, obstruction of justice, extortion, conspiracy, neglect to prevent conspiracy, and violations

of his Fourth, Fifth, Sixth, Thirteenth and Fourteenth Amendment rights.  (Compl. at 19.)  He

requests an award of money damages.  (*Id.*)  He alleges that all of the individual Defendants and

PennDOT were authorized representatives of Northampton County, that the County was

responsible for their training, and that the County is liable for their conduct.  (*Id.*)  The focus of

his claim is the allegedly illegal blood test, which Corbin claims was obtained by Defendant

Hacklar who relied upon a document prepared by PennDOT that by its terms violated Corbin's

constitutional rights.  (*Id.*)

To plead a basis for liability against a municipal entity such as Northampton County

under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation

of his constitutional rights.  *See Monell*, 436 U.S. 658, 694 (1978).  "To satisfy the pleading

standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v.*

*City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker

possess[ing] final authority to establish municipal policy with respect to the action issues an

official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798

(3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

"'Custom, on the other hand, can be proven by showing that a given course of conduct, although

not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to

constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a

custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had

knowledge of similar unlawful conduct in the past, failed to take precautions against future

violations, and that its failure, at least in part, led to [plaintiff's] injury."  *Id.* (internal quotations

and alterations omitted).  Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible claim.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  *Id.*

> As the United States Court of Appeals for the Third Circuit recently stated,
>
> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)).  "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary."  *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious."  *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Court of Common Pleas Judges Dantos and Murray and State Trooper Hacklar are employees of the Commonwealth.  District Attorney Thompson is an employee of the Northampton County District Attorney's Office, not Northampton County.  Public Defenders

DiLuzio and Light are similarly employed by the Public Defender's Officer and not Northampton County.  Thus, Corbin has not alleged that any employee of Northampton County violated his constitutional rights.  Accordingly, his claim against the County is not plausible and will be dismissed with prejudice.

    **E.**    **Claims Against Judges Dantos and Murray**

Corbin asserts individual capacity claims against Defendant Dantos based on her revocation of his bail in an unrelated case pending before her in Lehigh County while the case at issue was pending in Northampton County.  (Compl. at 16.)  He asserts claims against Defendant Murray based on his conduct during pre-trial proceedings, and at the non-jury trial over which he presided.  (*Id.* at 16-17.)  Corbin asserts claims against both judges for, *inter alia*, deprivation of his constitutional rights, conspiracy to interfere with his civil rights, neglect to prevent the conspiracy to interfere with his civil rights, unlawful restraint, false imprisonment, official oppression, obstruction of justice, involuntary servitude, and violations of the Pennsylvania Constitution.  (*Id.*)  He seeks an award of money damages and criminal prosecution of both Defendants.  (*Id.* at 16, 17, 21.)

Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."  *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"  *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Corbin concedes that the Defendants were acting in the course and scope of their judicial duties when they engaged in the described conduct. Indeed, the conduct described is undeniably judicial in nature. Moreover, there is no suggestion that either Defendant acted in the complete absence of all jurisdiction. Because entertaining and resolving motions, decisions regarding bail, and presiding over trials are functions normally performed by a judge, Judges Dantos and Murray enjoy absolute immunity from claims based on that conduct. Accordingly, Corbin's claims against them must be dismissed with prejudice.[14]

### F.    Claims Against District Attorney Thompson

Corbin alleges that Northampton County District Attorney Thompson, along with Corbin's defense counsel, "weaponized" bail as a means of trying to coerce or manipulate Corbin into entering into a plea agreement on the charges pending in Northampton County by failing to arrange his presence at a bail hearing in Northampton County when he was detained in Lehigh County. These claims are not plausible.

Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). Because all of the conduct alleged to have been engaged in by Defendant Thompson occurred in the course of

---

[14] Corbin also asserts official capacity claims against Judges Dantos and Murray, who are employees of the Lehigh and Northampton County Courts of Common Pleas, respectively. Courts of Common Pleas, as part of Pennsylvania's unified judicial system, share in the Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). Thus, Corbin's official capacity claims against Dantos and Murray are also barred by the Eleventh Amendment.

his representation of the Commonwealth in Corbin's criminal proceedings, he is entitled to absolute immunity and the claims against him must be dismissed with prejudice.[15]

### G.    Individual Capacity Claims Against Defendant Hacklar

Corbin alleges that the conduct engaged in by Defendant Hacklar violated his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and gave rise to other related claims.  (Compl. at 13.)  The claims are based on Hacklar's alleged illegal detention of Corbin, the allegedly unconstitutional manner in which he obtained Corbin's blood sample, and his participation in Corbin's continued prosecution, including providing allegedly perjured testimony at trial.  (*Id.* at 4-6, 11.)  It is Corbin's contention that all of these actions contributed to his illegal conviction and sentence.  (*Id.* at 11.)  In *Younger*, 401 U.S. 37, the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding."  *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger*).  "*Younger* abstention is only appropriate in three types of underlying state cases:  (1) criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving orders in furtherance of the state courts' judicial function."  *PDX N., Inc. v. Comm'r New Jersey Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 882 (3d Cir. 2020) (internal quotations omitted).

*Younger* abstention "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system."  *Evans v. Court of*

---

[15] Corbin also asserts an official capacity claim against Defendant Thompson.  However, as a prosecutor, Thompson is employed by the Northampton County District Attorney's Office and the United States Court of Appeals for the Third Circuit has held that district attorneys' offices in Pennsylvania are not entities subject to suit under § 1983.  *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of 1983 liability").  Thus, Corbin's official capacity claim against Thompson will be dismissed with prejudice.

*Common Pleas, Delaware Cty., Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992). Comity concerns are especially heightened when the ongoing state governmental function is a criminal proceeding. *Id.* The specific elements that warrant abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). Exceptions to the *Younger* doctrine exist where irreparable injury is "both great and immediate," where the state law is "flagrantly and patently violative of express constitutional prohibitions," or where there is a showing of "bad faith, harassment, or . . . other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 46, 53-54. These exceptions are to be narrowly construed. *Hall v. Pennsylvania*, No. 12-2373, 2012 WL 5987142, *2 (M.D. Pa. 2012) (citing *Loftus v. Twp. of Lawrence Park*, 764 F. Supp. 354, 357 (W.D. Pa. 1991)).

The *Younger* requirements are clearly met in this case for the claims against Hacklar. First, the publicly available docket from the Court of Common Pleas of Northampton County clearly reflects that Corbin appealed his conviction and is currently awaiting a decision by the Pennsylvania Superior Court. Second, the state proceedings implicate the important interest of enforcing the Commonwealth's criminal laws. Third, the appellate proceedings provide Corbin an adequate opportunity to argue in the state forum that the alleged misconduct by Hacklar resulted in his arrest and prosecution in a manner that violates his constitutional rights.[16] Further, there is nothing in the Complaint to indicate that Corbin's claims fall within any of the narrow exceptions to the *Younger* doctrine. Accordingly, it is appropriate to abstain from

---

[16] This Court may assume that the state procedures will afford Corbin an adequate remedy. *See Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)) ("Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff.").

entertaining Corbin's remaining claims against Hacklar out of deference to the state judicial

process.[17]  *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) ("If a plaintiff files a false-arrest

claim before he has been convicted (or files any other claim related to rulings that will likely be

made in a pending or anticipated criminal trial), it is within the power of the district court, and in

accord with common practice, to stay the civil action until the criminal case or the likelihood of a

criminal case is ended.  If the plaintiff is ultimately convicted, and if the stayed civil suit would

impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed,

absent some other bar to suit.") (citations omitted); *see also Ellis v. Mondello*, Civ. A. No. 05-

1492, 2005 WL 1703194, at *3 (D.N.J. 2005) ("[A]ssuming the criminal action is still pending in

a state trial or appellate court, review of the state court proceedings would be barred; a district

court cannot interfere in a pending state criminal action in order to consider issues that a plaintiff

can raise there.").

## IV.    CONCLUSION

For the reasons stated, Corbin's claims against the Commonwealth of Pennsylvania,

PennDOT, Northampton County, the official capacity claim against Defendant Hacklar, the

individual and official capacity claims against Defendants Dantos, Murray, and Thompson, and

the civil rights claims against Light and DiLuzio will be dismissed with prejudice pursuant to 28

---

[17]  Corbin asserts claims pursuant to 42 U.S.C. §§ 1985 and 1986 (*see* Compl. at 1).  Those claims are also subject to *Younger* abstention.  *See e.g.*, *Meador v. Paulson*, 385 F App'x 613 (8th Cir. 2010) (concluding that district court did not abuse its discretion in abstaining from resolving claims against a state prosecutor and state court judge pursuant to § 1985 under *Younger*); *Streater v. Paulson*, 217 F.3d 846 (9th Cir. 2000) (affirming district's application of *Younger* to state prisoner's claims under §§ 1985, 1986); *Brandy Found. Animal Sanctuary v. San Bernardino Cty.*, No. 08-02292, 2008 WL 11409512, at *3-*4 (C.D. Cal. June 20, 2008) (ordering a stay, on *Younger* abstention grounds, of the portions of the plaintiffs' § 1983 claims that concerned search and seizure, § 1985 conspiracy claims, and civil RICO claims, on the grounds that all of these claims were likely to interfere with ongoing criminal prosecutions).

U.S.C. § 1915(e)(2)(B)(ii).  The claims asserting violations of the Thirteenth Amendment, 42

U.S.C. §§ 1981, 1987, 1988, and 1994, and federal and state criminal statutes will also be

dismissed with prejudice.  Corbin will not be granted leave to amend these claims  because

amendment would be futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir.

2002).  The Court will abstain from addressing the remainder of Corbin's claims pursuant to

*Younger v. Harris*, 401 U.S. 37 (1971), and the case will be stayed.  Corbin may move to reopen

this action following the resolution of his pending appeal.  An appropriate Order follows.

<strong>BY THE COURT:</strong>

*/s/ John M. Gallagher*_____

**JOHN M. GALLAGHER, J.**